Filed 1/23/14  P. v. Maxon CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KENT LEE MAXON,<br><br>    Defendant and Appellant. | H039199<br>(Santa Clara County<br> Super. Ct. No. C1081500) |

## I.    INTRODUCTION

Defendant Kent Lee Maxon pleaded guilty to two counts of robbery.  (Pen. Code, §§ 211, 212.5, subd. (b).[1])  He admitted allegations that he personally used a deadly weapon (§ 12022, subd. (b)(1)) in the commission of both offenses and had suffered a prior conviction for robbery, which qualified as a serious felony and a strike (§§ 667, subds. (a), (b)-(i), 1170.12).  After the trial court denied defendant's motion to dismiss the strike allegation pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), it sentenced defendant to a 12-year prison term.

On appeal, defendant contends the trial court abused its discretion by denying his *Romero* motion.  For the reasons stated below, we will affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

## II.    BACKGROUND

### A.    *The Current Offenses*[2]

On June 19, 2010, defendant went to Bank of the West in San Jose.  He entered through the front doors wearing bicycling gear.  He approached Katherine Tran, a bank teller, and handed her a note, which stated, " 'This is a Robbery . . . here's my gun – look up . . . money from both tills out and on counter . . . no ink bombs – I'll just throw them at you.' "  As Tran began to remove money from the top drawer, defendant told her " 'Bottom drawer.' "  Defendant showed Tran a gun inside a fanny pack.  Tran, who was "shocked and nervous" but did not "fear for her life," believed the gun was a semiautomatic.  She gave defendant money, which he placed in his fanny pack.  Defendant then left the bank.  The bank later determined that the till was short $2,650.

On June 22, 2010, defendant went to Comerica Bank in Saratoga.  He rode there on a mountain bike.  He approached the teller window where Maly Nuon was working, and he gave Nuon a note, which read, " ' This is a robbery, give me all your money.' "  The note may also have mentioned a gun.  Nuon began putting money into an envelope, which defendant took and left.  Nuon believed defendant had a gun in his fanny pack.  She was "extremely scared."

Defendant was identified from fingerprints on the demand note that he left during the Bank of the West robbery.  On July 1, 2010, defendant was arrested at his residence in Santa Cruz.  Defendant admitted he had committed the two robberies, saying "that the only reason he wanted to come clean was so the Officer could tell the women (tellers) that it was not a real gun and that it was a toy gun.  It was important to him that they knew he would never have hurt them."  Defendant cried when talking about the tellers and wrote them apology letters.

---

[2] As defendant was convicted by plea, the facts of the current offense are taken from the probation report.

Defendant described how he had committed the Comerica Bank robbery. He drove to Saratoga with his bicycle in the trunk and parked some distance from the bank. He rode to the bank and rode back to his car afterwards, then put his bicycle back into the trunk and drove away. He disposed of the money in the ocean because the teller had put a dye pack in the envelope.

Defendant admitted he had a pellet gun when he committed the Bank of the West robbery, but he claimed he did not have the gun during the Comerica Bank robbery.

Defendant explained his motivation for committing the robberies. He needed money for house payments and household bills. He confessed to committing two more bank robberies in Santa Cruz. At the time of sentencing, defendant was facing two robbery charges in Santa Cruz County.

### B. The Prior Offense[3]

In 1993, defendant committed a bank robbery with his brother. He was 27 years old at the time. His brother had significant gambling debts and was suicidal. "To help his brother and to keep his brother from committing suicide, they robbed Bank of America in Santa Cruz with a sawed off shot gun," which had no ammunition. They took $38,000 from the bank and were immediately apprehended, so the money was returned to the bank.

Defendant was convicted of possessing a dangerous weapon (former § 12020) and robbery (§ 211), with an allegation that he had been armed with a firearm (§ 12022, subd. (a)(1).) He served one year in county jail and then successfully completed probation.

### C. Plea Proceedings

On March 15, 2011, defendant pleaded guilty to both robbery charges. He also admitted both allegations of deadly weapon use (§ 12022, subd. (b)(1)), as well as the

---

[3] The facts of the prior offense are taken from the probation report.

allegations that he had suffered a prior robbery conviction that qualified as a serious felony and a strike (§§ 667, subds. (a), (b)-(i), 1170.12).

During the plea proceedings, the parties agreed that defendant faced a maximum prison term of 19 years, and, if a *Romero* motion was granted, a minimum prison term of eight years.

### D. Probation Report

Defendant was 45 years old in May of 2011 when he was interviewed by the probation officer.

Defendant began using cocaine in 1983, when he was a senior in high school. His drug use "got worse in 2010, after his wife left him." At that point, he used cocaine five to six times per day, spending about $150 per week on the drug. Defendant also began using marijuana in 1983, and his use of that drug became more frequent after his wife left him: he began smoking it on a daily basis. Likewise, his consumption of alcohol increased to the point where he was "tipsy on a daily basis." Defendant had not previously participated in substance abuse programs, but he was doing so while incarcerated in jail.

Defendant had separated from his wife in February of 2010, and she was living in the state of Washington with their two young children. He had started a handyman business in 1994, but his income had been significantly reduced due to the economy. He had attended three years of college.

Defendant expressed remorse during his probation interview. He indicated that after he served his sentence, he would live with his father in Castro Valley, work as a painter or handyman, and go back to school to learn about the solar industry.

### E. The Romero Motion and Opposition

In his *Romero* motion, defendant highlighted the following facts. His only prior conviction was the prior robbery, which he had committed in 1992. He "committed no other law violations" until 18 years later, when he committed the present offenses. In the

4

interim, he had married, become a father, and started a business. However, after his business had failed due to the economy and his wife and children had left him, his substance abuse had "spiral[ed] out of control."

Concerning the current offenses, defendant emphasized that he immediately confessed and that – at least in one of the robberies – he had not been armed with an "actual weapon." In addition, his crimes had been "committed quietly and calmly" and thus "were not violent."

The prosecution filed an opposition to defendant's *Romero* motion, arguing that striking the prior conviction would be an abuse of discretion. The prosecution argued that "[r]obbery is a serious and violent felony" and pointed out that the two tellers had been fearful during the robberies. The prosecution argued that even if, as defendant claimed, he was not actually armed with a weapon during both robberies, he did "threaten the use of violence" in both crimes. The prosecution further noted that the two robberies occurred close together in time to one another, and close in time to two other robberies that defendant committed.

Concerning the prior offense, the prosecution noted that it had occurred when defendant was 27 years old and thus defendant did not have "the excuse of youthful poor decision making."

Regarding defendant's background, character, and prospects, the prosecution claimed that defendant had not been "a law-abiding, gainfully employed citizen" during the 18 years between his offenses, in that he had borrowed a large sum of money from his wife's family without returning it. Finally, the prosecution noted that although defendant had admitted his guilt in the present case, he also had been caught quickly and had not turned himself in.

5

### F.  The Romero Hearing/Sentencing

The trial court heard defendant's *Romero* motion on August 8, 2011.  At the beginning of the hearing, defendant addressed the court to explain what happened with the loan from his in-laws.  The trial court then made its findings.

The trial court indicated it had "spent a lot of time" on the case, trying to "see if there is something in the prospects that would tell me this could never – financial difficulty would never trigger a similar response."  The court "couldn't find that in this case."  Instead, it found a defendant who had been "taking the easy way out" whenever he "became in financial straits" by robbing banks and "scar[ing] people half to death."  The court believed defendant would likely "resort to illegal activity in order to gain money again" in the future.  The trial court found that defendant fit the profile of a typical bank robber, in that he had no other criminal history but had repeatedly robbed banks.  The court did not see defendant "as much different" than other bank robbers.

The trial court indicated that because defendant's prospects were not good, "there is no reason to grant the *Romero*."  The court further noted, "In fact, I think it would be [an] abuse of discretion to do so.  But even if it wouldn't, he loses on all three prongs of the traditional *Romero* test."

The trial court then addressed defendant's addiction, noting that it "worsens his prospects" because "people who have an addiction are more likely to re-offend."

The trial court also addressed the effect of defendant's possible future crimes on the victims.  It noted that if he went on "another string of bank robberies," it could cause victims to suffer heart attacks and have "nightmares of reliving these situations."

Regarding the overall sentence, the trial court noted that it was not sentencing defendant for the Santa Cruz crimes and that it was "not sure what [it] would have done" with those charges.  The court stated that running all of the sentences consecutively might be "too much of a penalty."  The court noted that the Santa Cruz court might see "their

6

cases differently and grant[] a *Romero* in those cases," since there were "some positive things about the defendant in his prospects prong."

Ultimately, the trial court determined that there was not "enough to overcome the serious and violent nature of the prior[] and these current cases and all the negatives," and it denied defendant's *Romero* motion. It imposed a 12-year prison term, comprised as follows: the two-year low term for count 1, doubled to four years because of the strike; a consecutive one-year term for the deadly weapon use allegation associated with count 1; a consecutive two-year term for count 2, calculated at one-third of the midterm; and a consecutive five-year term for the prior serious felony conviction (§ 667, subd. (a)). The court stayed the punishment for the deadly weapon use allegation associated with count 2 pursuant to section 1385.

### III.    DISCUSSION

Defendant contends the trial court abused its discretion by denying his *Romero* motion. As we shall explain, we find no error.

#### A.    *Applicable Law*

In *People v. Carmony* (2004) 33 Cal.4th 367 (*Carmony*), the California Supreme Court set forth the basic principles applicable to a trial court's decision to strike a prior conviction. " 'In *Romero,* we held that a trial court may strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony, on its own motion, "in furtherance of justice" pursuant to . . . section 1385(a).' [Citation.] We further held that '[a] court's discretionary decision to dismiss or to strike a sentencing allegation under section 1385 is' reviewable for abuse of discretion. [Citation.]" (*Carmony, supra,* 33 Cal.4th at p. 373.)

"In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a

showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra,* 33 Cal.4th at pp. 376–377.)

" '[T]he Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' [Citation.]" (*Carmony, supra,* 33 Cal.4th at p. 377.) " '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (*Carmony, supra,* 33 Cal.4th at p. 377.)

### B. Contentions

Defendant contends that the trial court made four errors in analyzing his *Romero* motion. First, he claims the trial court "exaggerated the gravity of the current crime[s]," by failing to acknowledge that they involved a "considerable lack of planning." Second,

8

he claims the trial court "mischaracterized the current and past strike offense as 'violent' " since none of the crimes involved any " 'actual violence.' "  Third, he claims the trial court wrongly observed that " 'it would be an abuse of discretion' " to grant *Romero* relief.  Finally, he contends the trial court failed to consider several favorable factors relating to his background, character, and prospects, as well as the actual sentence that would be imposed if the *Romero* motion was granted.

The Attorney General contends the trial court "carefully considered" all pertinent factors and did not abuse its discretion in denying the *Romero* motion.

### C. Analysis

Taking defendant's contentions in turn, we first disagree that his current offenses were not as serious as the trial court found.  According to defendant, the robberies were "unsophisticated and unplanned."  The record does not support this claim.  Defendant obviously planned both robberies:  he had prepared notes for the tellers, and he had traveled to San Jose from Santa Cruz with his bicycle in his car, then rode the bicycle to and from the banks to facilitate his escapes and avoid being caught.  He was also a sophisticated bank robber, as he knew that the teller could place " 'ink bombs' " in the envelope with the money.  The fact that he used a gun (even if it was, as he claimed, only a pellet gun) during at least one of the robberies further supported a finding that the current offenses were serious, such that defendant did not fall outside the spirit of the Three Strikes law.  (See *Carmony, supra,* 33 Cal.4th at p. 377.)

Defendant also claims that his current offenses were less serious because they were committed 18 years after the prior offense and they were "situational," in that they occurred "when his life had spiraled out of control."  While somewhat remote, the fact that defendant's prior conviction was for the same crime as in the present case militates against treating defendant as if the prior had not occurred.  (See *Carmony, supra,* 33 Cal.4th at p. 377.)  Likewise, although the current offenses may have been spurred by defendant's circumstances, the trial court aptly recognized that defendant appears to

9

resort to bank robberies whenever he is "in financial straits" and that nothing in defendant's history indicates he would not do so if he found himself in a similar situation in the future.

Second, we disagree that the trial court mischaracterized defendant's current and prior robbery offenses as violent. Not only is robbery a " 'violent felony' " pursuant to section 667.5, subdivision (c)(9), but defendant's characterization of his crimes as not involving any "acts of violence" is misleading. Defendant was armed with a firearm in the prior robbery and the Bank of the West robbery, and he made reference to a gun in the Comerica Bank robbery. His actions at least implied a threat to use a firearm, and while not actually leading to violence, cannot be characterized as nonviolent in any way. (Cf. *People v. Garcia* (1999) 20 Cal.4th 490, 503 [defendant's five prior burglaries were serious felonies but did not "include any actual violence"].)

Third, we disagree that the trial court erroneously found that it would have been an abuse of discretion to grant *Romero* relief in this case. Although the trial court did make that remark, it also noted that there were "some positive things" such that the Santa Cruz court might see things differently and grant a *Romero* motion in defendant's other case. Contrary to defendant's claim, this isolated comment does not demonstrate that the trial court believed it "did not have an option but to deny the requested relief." The record demonstrates that the trial court considered the relevant factors, then exercised its discretion in denying defendant's motion.

Fourth, we disagree that the trial court erred by failing to consider certain factors concerning defendant's background and character. According to defendant, the trial court should have considered: (1) the fact that defendant had no "early criminal history;" (2) the fact that defendant was seeking treatment for his controlled substance addictions; (3) the fact that a non-Three Strikes sentence would still be significant – according to defendant, he still would have received a minimum of seven years; and (4) the fact that his present offenses were all committed closely together during a difficult time in his life.

The trial court is presumed to have considered all of the relevant factors relating to a *Romero* motion in the absence of an affirmative record to the contrary. (*People v. Kelley* (1997) 52 Cal.App.4th 568, 582; see also *People v. Myers* (1999) 69 Cal.App.4th 305, 310 ["the fact that the court focused its explanatory comments on the violence and potential violence of appellant's crimes does not mean that it considered only that factor"].) Moreover, contrary to defendant's claim, the record indicates that the trial court *did* consider the length of the term defendant would have received without the strike and the fact that the present offenses were all committed during a short time period. During the plea proceedings, the trial court specifically asked what defendant's sentence would be "if the *Romero* was granted," and during the *Romero* hearing, the trial court referred to defendant's current offenses as having occurred during a "spree."

Even if the trial court should have expressly addressed the other two factors defendant identifies – his lack of any early criminal history and his recent efforts to control his substance abuse, neither factor weighed in favor of *Romero* relief. Although defendant points out that "the lack of a juvenile record" is "a factor tending to show suitability for parole" (see *In re Bettencourt* (2007) 156 Cal.App.4th 780, 803), he does not identify any authority for the proposition that such a factor warrants granting *Romero* relief. Here, because defendant's adult record consists of multiple bank robberies, the trial court reasonably found that none of defendant's prior and present offenses were the result of youthful indiscretion and thus that he did not fall outside the spirit of the Three Strikes law. (See *Carmony, supra,* 33 Cal.4th at p. 377.) Likewise, although the record indicates that defendant was seeking treatment for his substance abuse issues, the trial court was not required to consider this fact favorably in determining whether to grant *Romero* relief. Nothing in the record indicates that defendant's criminality was directly related to his substance abuse, and it is significant that until his current arrest, defendant had done "little to address his substance abuse problems." (*Carmony, supra,* 33 Cal.4th at p. 378.)

11

In sum, we find no basis for concluding that the trial court failed to consider all of the relevant factors in deciding whether to grant *Romero* relief or that the trial court abused its discretion by denying defendant's *Romero* motion.

## IV.   DISPOSITION

The judgment is affirmed.


_____
BAMATTRE-MANOUKIAN, ACTING P.J.



WE CONCUR:




_____
MÁRQUEZ, J.




_____
GROVER, J.